1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ELIAS C. RUIZ,                                No.  1:22-cv-1468 DAD DB PS

12                     Plaintiff,

13           v.                                     ORDER

14    TOMAS J. ARAGON, in his official
      capacity, et al.,
15

16                     Defendants.

17

18          Plaintiff Elias C. Ruiz is proceeding in this action pro se.  This matter was referred to the

19    undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Pending

20    before the court are defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure

21    ("Rule") 12(b)(1) and 12(b)(6), and to strike pursuant to Rule 12(f).  For the reasons stated below,

22    defendants' motions to dismiss are granted and plaintiff is granted leave to file an amended

23    complaint.

24                                    **BACKGROUND**

25          Plaintiff, proceeding pro se, commenced this action in the Freson Division on November

26    14, 2022, by filing a complaint and paying the applicable filing fee.  (ECF No. 1.)  The complaint

27    alleges that plaintiff has been employed by defendant Turlock Unified School District ("TUSD")

28    ////

                                              1

1   since August 16, 2010.  (Compl. (ECF No. 1) at 2.[1])  In response to the COVID-19 pandemic,

2   from August 12, 2021, to September 16, 2022, defendant California Department of Public Health

3   ("CDPH") implemented a mandate requiring "asymptomatic unvaccinated or incompletely

4   vaccinated school workers to undergo diagnostic COVID-19 screening testing."[2]  (Id.)  Pursuant

5   to the mandate employees who were "not fully vaccinated, or for whom vaccine status [was]

6   unknown or documentation [was] not provided" would be "considered unvaccinated."  (Id.)

7   "Plaintiff declined to state his COVID-19 vaccination status."  (Id.)

8          Pursuant to these allegations the complaint asserts causes of action for an Equal Protection

9   violation, disability discrimination, religious discrimination, violation of California Labor Code

10  sections, invasion of privacy, stalking, the intentional infliction of emotional distress, and

11  vicarious liability.  (Id. at 2-14.)  On December 29, 2022, defendants CDPH and Thomas J.

12  Aragon filed a motion to dismiss.  (ECF No. 19.)  Plaintiff filed an opposition on January 9, 2023.

13  (ECF No. 23.)  Defendants CDHP and Aragon filed a reply on January 19, 2023.  (ECF No. 26.)

14  On January 27, 2023, defendants TUSD and David Lattig filed a motion to dismiss.  (ECF No.

15  29.)  On September 13, 2023, this action was reassigned to the Sacramento Division pursuant to

16  Local Rule 120.  (ECF No. 39.)

17                                    **STANDARDS**

18  **I.      Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(1)**

19         Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

20  motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

21  claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction may

22  either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the

23  existence of subject matter jurisdiction in fact."  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,

24  594 F.2d 730, 733 (9th Cir. 1979).

25  _____

    [1] Page number citations such as this one are to the page number reflected on the court's CM/ECF
26  system and not to page numbers assigned by the parties.

27  [2] Also named as defendants in the complaint are Director of California Department of Public
    Health, Tomas J. Aragon, and David Lattig, TUSD Superintendent of Human Resources.
28  (Compl. (ECF No. 1) at 1.)

1       When a party brings a facial attack to subject matter jurisdiction, that party contends that

2  the allegations of jurisdiction contained in the complaint are insufficient on their face to

3  demonstrate the existence of jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039

4  (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards

5  similar to those applicable when a Rule 12(b)(6) motion is made.  See Sea Vessel Inc. v. Reyes,

6  23 F.3d 345, 347 (11th Cir. 1994); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir.

7  1990).  The factual allegations of the complaint are presumed to be true, and the motion is granted

8  only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  Savage v.

9  Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003); Miranda v.

10  Reno, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).  Nonetheless, district courts "may review

11  evidence beyond the complaint without converting the motion to dismiss into a motion for

12  summary judgment" when resolving a facial attack.  Safe Air for Everyone, 373 F.3d at 1039.

13       When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no

14  presumption of truthfulness attaches to the plaintiff's allegations.  Thornhill Publ'g Co., 594 F.2d

15  at 733.  "[T]he district court is not restricted to the face of the pleadings, but may review any

16  evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

17  jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When a Rule

18  12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden

19  of establishing that such jurisdiction does in fact exist.  Thornhill Publ'g Co., 594 F.2d at 733.

20  **II.      Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)**

21       The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

22  sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

23  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

24  sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

25  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

26  relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A

27  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

28  ////

3

1    the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

2    Iqbal, 556 U.S. 662, 678 (2009).

3          In determining whether a complaint states a claim on which relief may be granted, the

4    court accepts as true the allegations in the complaint and construes the allegations in the light

5    most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

6    United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less

7    stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519,

8    520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the

9    form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

10   Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than

11   an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A

12   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

13   elements of a cause of action." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676

14   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

15   statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove

16   facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

17   not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,

18   459 U.S. 519, 526 (1983).

19   **III.     Legal Standards Applicable to Motions to Strike Pursuant to Rule 12(f)**

20         A motion to strike pursuant to Rule 12(f) allows a court to strike "from any pleading any

21   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

22   Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

23   money that must arise from litigating spurious issues by dispensing with those issues prior to

24   trial[.]" Whittlestone, Inc. v. Handi-Craft, Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting

25   Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)), *rev'd on other grounds by* Fogerty

26   v. Fantasy, Inc., 510 U.S. 517, 114 (1994); see also Sidney-Vinstein v. A.H. Robins Co., 697 F.2d

27   880, 885 (9th Cir. 1983).

28   ////

1      A motion to strike is well-taken when "it is clear that the matter to be stricken could have

2  no possible bearing on the subject matter of litigation." LeDuc v. Kentucky Central Life Ins. Co.,

3  814 F.Supp. 820, 830 (N.D. Cal. 1992).  Impertinent allegations are those that are not responsive

4  or relevant to issues involved in the action and which could not be admitted as evidence in the

5  litigation. Fantasy, Inc., 984 F.2d at 1527.  "Scandalous" within the meaning of Rule 12(f)

6  includes allegations that cast a cruelly derogatory light on a party or other person. Talbot v.

7  Robert Mathews Distributing Co., 961 F.2d 654, 665 (7th Cir. 1992).

8      Ultimately, whether to grant a motion to strike applying these standards lies within the

9  sound discretion of the district court. Fantasy, Inc., 984 F.2d at 1527; see also California Dept. of

10  Toxic Substances Control v. Alco Pacific, Inc., 217 F.Supp.2d 1028, 1032-33 (C.D. Cal. 2002).[3]

11                                          **ANALYSIS**

12  **I.       Defendants' Motions to Dismiss**

13      Review of the parties' briefing finds that defendants' motions to dismiss should be granted

14  for several reasons.

15           **A.       Eleventh Amendment Immunity**

16      In general, the Eleventh Amendment bars suits against a state, absent the state's

17  affirmative waiver of its immunity or congressional abrogation of that immunity. Pennhurst v.

18  Halderman, 465 U.S. 89, 98-99 (1984); Simmons v. Sacramento County Superior Court, 318 F.3d

19  1156, 1161 (9th Cir. 2003); Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d

20  1241, 1245 (9th Cir. 1999); see also Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of

21  Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against

22  the State or its agencies for all types of relief, absent unequivocal consent by the state.").

23      To be a valid waiver of sovereign immunity, a state's consent to suit must be

24  "unequivocally expressed in the statutory text." Lane v. Pena, 518 U.S. 187, 192 (1996); see also

25  Pennhurst, 465 U.S. at 99; Yakama Indian Nation, 176 F.3d at 1245.  "[T]here can be no consent

26
27  ───────────────
   [3] Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted. Bureerong v.
   Uvawas, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).  A motion to strike should therefore not be
   granted unless it is absolutely clear that the matter to be stricken could have no possible bearing
28  on the litigation. Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

1    by implication or by use of ambiguous language." United States v. N.Y. Rayon Importing Co.,

2    329 U.S. 654, 659 (1947).  Courts must "indulge every reasonable presumption against waiver,"

3    Coll. Sav. Bank v. Florida Prepaid, 527 U.S. 666, 682 (1999), and waivers "must be construed

4    strictly in favor of the sovereign and not enlarged beyond what the [statutory] language requires."

5    United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (citations, ellipses, and internal

6    quotation marks omitted).  "To sustain a claim that the Government is liable for awards of

7    monetary damages, the waiver of sovereign immunity must extend unambiguously to such

8    monetary claims." Lane, 518 U.S. at 192.

9        The Ninth Circuit has recognized that "[t]he State of California has not waived its

10   Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and

11   the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh

12   Amendment immunity." Brown v. California Dept. of Corrections, 554 F.3d 747, 752 (9th Cir.

13   2009) (quoting Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999)).

14       "[T]he Eleventh Amendment bars a federal court from hearing claims by a citizen against

15   dependent instrumentalities of the state." Cerrato v. San Francisco Community College Dist., 26

16   F.3d 968, 972-73 (9th Cir. 1994).  Here, the complaint seeks "money damages" against the

17   California Department of Public Health and its director Tomas J. Aragon.  (Compl. (ECF No. 1)

18   at 1-2.)  CDPH and its officers are immune from suits for money damages pursuant to the

19   Eleventh Amendment.  See Aids Healthcare Foundation v. Belshe, No. CV97-3235, 1998 WL

20   1157405, at *9 (C.D. Cal. Dec. 8, 1998).  Thus, it does not appear that plaintiff can obtain money

21   damages from defendants CDPH and Tomas J. Aragon.

22       **B.    Rule 8**

23       Based on the sparse facts recounted above plaintiff's complaint asserts eight causes of

24   action.  However, those causes of action frequently fail to contain allegations addressing which

25   defendant or defendants the claim is asserted against and what were the wrongful actions of the

26   defendant or defendants.  Instead, the causes of action simply "reallege[] and restate[]" the factual

27   allegations noted above.

28   ////

6

1    Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

2  complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

3  state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v.

4  Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels

5  and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor

6  does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

7  enhancements.'"  Ashcroft v. Iqbal, 556 U.S.662, 678 (2009) (quoting Twombly, 550 U.S. at 555,

8  557).  A plaintiff must allege with at least some degree of particularity overt acts which the

9  defendants engaged in that support the plaintiff's claims.  Jones, 733 F.2d at 649.

10    Here, the complaint fails to allege facts that state the elements of each claim plainly and

11  succinctly.

12        **C.    Equal Protection**

13    The complaint alleges that the defendants violated the Equal Protection Clause of the

14  Fourteenth Amendment because the "CDPH Mandate was illogical and cannot withstand strict

15  scrutiny or even a rational basis test because naturally immune individuals . . . have at least as

16  good or better immunity to the virus that causes COVID-19[.]"  (Compl. (ECF No. 1) at 3.)  "The

17  Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

18  person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

19  all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living

20  Ctr., 473 U.S. 432, 439 (1985); see also Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.

21  2001).

22    To state a viable claim under the Equal Protection Clause, a plaintiff "must plead

23  intentional unlawful discrimination or allege facts that are at least susceptible of an inference of

24  discriminatory intent."  Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir.

25  1998).  "Intentional discrimination means that a defendant acted at least in part because of a

26  plaintiff's protected status."  Serrano v. Francis, 345 F.3d 1071 (9th Cir. 2003) (quoting Maynard

27  v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

28  ////

7

1    Here, the complaint does contain any allegations that a defendant intentionally

2    discriminated against plaintiff based on plaintiff's protected status.

3         **D.      Disability Discrimination**

4         The complaint also alleges "disability discrimination" pursuant to the "Americans with

5    Disabilities Act." (Compl. (ECF No. 1) at 4.)  "Congress enacted the ADA 'to provide clear,

6    strong, consistent, enforceable standards addressing discrimination against individuals with

7    disabilities.'" Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666,

8    669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)).  Pursuant to the ADA:

9
> No covered entity shall discriminate against a qualified individual
10
> with a disability because of the disability of such individual in regard
> to job application procedures, the hiring, advancement, or discharge
> of employees, employee compensation, job training, and other terms,
11
> conditions, and privileges of employment.

12   42 U.S.C. § 12112(a).

13       "A person is 'regarded as' having a disability 'if the individual establishes that he or she

14   has been subjected to an action prohibited under this chapter because of an actual or perceived

15   physical or mental impairment whether or not the impairment limits or is perceived to limit a

16   major life activity.'"  Scott v. Napolitano, 717 F.Supp.2d 1071, 1086 (S.D. Cal. 2010) (quoting 42

17   U.S.C. § 12102(3)(A)).  Here, the complaint fails to allege that a defendant discriminated against

18   plaintiff or subjected plaintiff to a prohibited action.

19       In this regard, the complaint alleges that the "COVID-19 surveillance testing policy

20   regarded workers with a previous antibody test for COVID-19 as immunodeficient." (Compl.

21   (ECF No. 1) at 5.)  However, "[s]ince its detection in late 2019, the outbreak of SARS-CoV-2

22   (COVID-19) has metamorphosized into the deadliest worldwide pandemic since the 1918

23   outbreak of Spanish flu."  Brox v. Hole, 590 F.Supp.3d 359, 363 (D. Mass. 2022).  The pandemic

24   "has caused the deaths of over six million persons worldwide[.]"  (Id.)  As of December 22, 2020,

25   in California alone there had "been nearly 1.9 million cases and nearly 23,000 deaths."  Disbar

26   Corporation v. Newsom, 508 F.Supp.3d 747, 750 (E.D. Cal. 2020).  The Supreme Court has

27   recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling state

28   interest[.]"  Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (U.S. 2020).

1    Here, the complaint fails to explain how the mandate at issue was in any way

2  discriminatory, constituted an adverse employment action, or was in any way unlawful.  See

3  generally Klaassen v. Trustees of Indiana University, 7 F.4th 592, 593 (7th Cir. 2021) ("These

4  plaintiffs just need to wear masks and be tested, requirements that are not constitutionally

5  problematic."); Burcham v. City of Los Angeles, 562 F.Supp.3d 694, 704 (C.D. Cal. 2022)

6  ("Plaintiffs fail to state a claim that the City's weekly testing requirement violates the Fourth

7  Amendment"); Troogstad v. City of Chicago, 571 F.Supp.3d 901, 910 (N.D. Ill. 2021) ("Because

8  the exigencies of the current pandemic justify the degree of intrusion at issue here, Plaintiffs have

9  not demonstrated that Defendants' vaccine and testing policies infringe a fundamental

10  constitutional right."); Valdez v. Grisham, 559 F.Supp.3d 1161 (D. N.M. 2021) ("federal courts

11  have consistently held that vaccine mandates do not implicate a fundamental right").  "'[T]he

12  ADA does not provide a blanket exemption to people with disabilities from complying with

13  legitimate safety requirements necessary for safe operations.'"  Warner v. Delano, Case No. 21-

14  cv-05666 HSG, 2021 WL 5507160, at *2 (N.D. Cal. Nov. 24, 2021) (quoting DEPARTMENT

15  OF JUSTICE OFFICE OF PUBLIC AFFAIRS, *The Department of Justice Warns of Inaccurate*

16  *Flyers and Postings Regarding the Use of Face Masks and the Americans with Disabilities Act*,

17  https://www.justice.gov/opa/pr/department-justice-warns-inaccurate-flyers-and-postings-

18  regarding-use-face-masks-and (last accessed May 5, 2022)).

19         **E.     First Amendment**

20    The complaint alleges that plaintiff requested "a reasonable religious accommodation that

21  would have allowed him to continue working without being subjected to" the mandate.  (Compl.

22  (ECF No. 1) at 6.)  TUSD denied that request, thereby "discriminating against Plaintiff's desire to

23  freely exercise his religious belief" in violation of the First Amendment.  (Id.)

24    "The Free Exercise Clause of the First Amendment, which has been made applicable to

25  the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make

26  no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]'"

27  Employment Div., Oregon Dep't of Human Resources v. Smith, 494 U.S. 872, 876-77 (1990)

28  (citing U.S. Const. amend. 1) (internal citation omitted).  To show a violation of the First

9

1    Amendment a complaint must establish there was "a substantial burden on the observation of a

2    central religious belief or practice[.]"  Hernandez v. Commissioner of Internal Revenue, 490 U.S.

3    680, 699 (1989).  The burden must have impacted a central religious belief or practice, one that is

4    "mandated by [plaintiff's] faith."  Freeman v. Arparo, 125 F.3d 732, 736 (9th Cir. 1997).

5           Here, the complaint fails to contain the necessary factual allegations to support a First

6    Amendment claim.

7           **F.     Exhaustion**

8           As noted above, the complaint makes repeated reference to alleged employment

9    discrimination.  "Title VII exists in large part 'to make persons whole for injuries suffered on

10   account of unlawful employment discrimination.'"  Clemens v. Centurylink Inc., 874 F.3d 1113,

11   1115 (9th Cir. 2017) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)).  To this

12   end, "Title VII forbids certain employers from 'discriminat[ing] against any individual with

13   respect to [her] compensation, terms, conditions, or privileges of employment, because of such

14   individual's race, color, religion, sex, or national origin.'"  Campbell v. Hawaii Department of

15   Education, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)).

16          "In order to bring a Title VII claim in district court, a plaintiff must first exhaust her

17   administrative remedies."  Sommatino v. U.S., 255 F.3d 704, 707 (9th Cir. 2001).  A plaintiff

18   exhausts their "administrative remedies by filing a charge with the EEOC or an equivalent state

19   agency, like the DFEH, and receiving a right-to-sue letter."  Scott v. Gino Morena Enterprises,

20   LLC, 888 F.3d 1101, 1106 (9th Cir. 2018).  The court only has jurisdiction over "charges of

21   discrimination that are like or reasonably related to the allegations made in the EEOC charge, or

22   that fall within the EEOC investigation which can reasonably be expected to grow out of the

23   charge of discrimination."  Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir. 2000)

24   (quotation omitted).  "We 'consider [a] plaintiff's civil claims to be reasonably related to

25   allegations in the charge to the extent that those claims are consistent with the plaintiff's original

26   theory of the case.'"  Freeman v. Oakland Unified School

27   Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting B.K.B. v. Maui Police Dept., 276 F.3d 1091,

28   1100 (9th Cir. 2002)).

1      Here, the complaint does not allege that plaintiff exhausted any administrative remedies.

2   **II.      Leave to Amend**

3      The undersigned has carefully considered whether plaintiff could amend the complaint to

4   state a claim upon which relief could be granted.  Valid reasons for denying leave to amend

5   include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v.

6   Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n

7   v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to

8   amend shall be freely given, the court does not have to allow futile amendments).

9      Here, the undersigned cannot yet say that it appears beyond doubt that leave to amend

10  would be futile.  Plaintiff's complaint will therefore be dismissed, and plaintiff will be granted

11  leave to file an amended complaint.  Plaintiff is cautioned, however, that if plaintiff elects to file

12  an amended complaint "the tenet that a court must accept as true all of the allegations contained

13  in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause

14  of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.

15  "While legal conclusions can provide the complaint's framework, they must be supported by

16  factual allegations." Id. at 679.  Those facts must be sufficient to push the claims "across the line

17  from conceivable to plausible[.]" Id. at 680 (quoting Twombly, 550 U.S. at 557).

18     Plaintiff is also reminded that the court cannot refer to a prior pleading in order to make an

19  amended complaint complete.  Local Rule 220 requires that any amended complaint be complete

20  in itself without reference to prior pleadings.  The amended complaint will supersede the original

21  complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in an amended complaint,

22  just as if it were the initial complaint filed in the case, each defendant must be listed in the caption

23  and identified in the body of the complaint, and each claim and the involvement of each

24  defendant must be sufficiently alleged.  Any amended complaint which plaintiff may elect to file

25  must also include concise but complete factual allegations describing the conduct and events

26  which underlie plaintiff's claims.

27  ////

28  ////

11

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' December 29, 2022 motion to dismiss (ECF No. 19) is granted;

2. Defendants' January 27, 2023 motion to dismiss (ECF No. 29) is granted;

3. The complaint filed November 14, 2022 (ECF No. 1) is dismissed with leave to amend;

4. Within twenty-eight days from the date of this order, an amended complaint shall be filed that cures the defects noted in this order and complies with the Federal Rules of Civil Procedure and the Local Rules of Practice.[4]   The amended complaint must bear the case number assigned to this action and must be titled "Amended Complaint"; and

5. Plaintiff is cautioned that the failure to comply with this order in a timely manner may result in a recommendation that this action be dismissed.

DATED:  September 20, 2023                    /s/ DEBORAH BARNES
                                            UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.pro se/ruiz1468.dism.ord

---

[4] Alternatively, if plaintiff no longer wishes to pursue this action plaintiff may file a notice of voluntary dismissal of this action pursuant to Rule 41 of the Federal Rules of Civil Procedure.

12