UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS RUIZ,<br><br>Plaintiff,<br><br>v.<br><br>TOMAS J. ARAGON, *in his official capacity as Director of the California Department of Public Health*, et al.,<br><br>Defendants. | No. 1:22-cv-01468-DAD-DB<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND CLOSING THE CASE<br><br>(Doc. Nos. 49, 50) |

This matter is before the court on two motions to dismiss brought pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, one filed on behalf of defendants Turlock Unified School District ("TUSD") and David Lattig (collectively, the "Turlock defendants"), (Doc. No. 49), and the other filed by defendants California Department of Public Health ("CDPH") and Tomas J. Aragon (collectively, the "state defendants"), (Doc. No. 50). On December 18, 2023, the motions were taken under submission on the papers pursuant to Local Rule 230. (Doc. No. 60.) For the reasons explained below, the court will grant both motions to dismiss.

/////

/////

/////

**BACKGROUND**

On November 13, 2022, plaintiff initiated this civil rights action. (Doc. No. 1.) Plaintiff filed the operative first amended complaint ("FAC") on October 20, 2023.[1] (Doc. No. 47.) Defendants previously had filed motions to dismiss plaintiff's original complaint, which the court granted with leave to amend.[2] (Doc. No. 40.) In his FAC, plaintiff asserts all seven of his claims collectively against all four defendants: Tomas J. Aragon in his official capacity as director of the CDPH; the CDPH; David Lattig in his official capacity as the assistant superintendent of human resources for the TUFD; and the TUFD. (Doc. No. 47.) Plaintiff alleges that all times material to this lawsuit, defendants Aragon and Lattig were public officials of the State of California. (*Id.* at ¶ 4.)

In his FAC, plaintiff alleges as follows. Plaintiff has been continually employed by the TUSD since August 16, 2010, and is still currently a certificated public employee of TUSD. (*Id.* at ¶ 8.) In August 2021, plaintiff was tested for SARS-CoV-2 ("COVID-19") antibodies and received a positive result. (*Id.* at ¶ 9.) Plaintiff was informed and believes that this indicated he had natural immunity against COVID-19 that was equal to or greater than the immunity provided by any available vaccination at that time. (*Id.*)

On October 5, 2021, the TUSD announced that a COVID-19 testing policy would be implemented district-wide, requiring all employees to comply under threat of discipline. (*Id.* at ¶ 10.) On October 8, 2021, a Memorandum of Understanding ("MOU") was entered into between the TUSD and the Turlock Teachers Association. (*Id.* at ¶ 11.) The MOU included a new policy threatening disciplinary action for unvaccinated school workers, including suspension

---

[1] Plaintiff initially filed the FAC on October 19, 2023. (Doc. No. 46.) However, that version did not include a case number and mistakenly listed an additional attorney on behalf of plaintiff and a different address listed for plaintiff's counsel. (*Id.*) Accordingly, plaintiff submitted a corrected version of the FAC on October 20, 2023. (Doc. No. 47.) The court will refer to the FAC filed on October 20, 2023.

[2] In accordance with Local Rule 302(b)(21), the prior motions to dismiss were addressed by the assigned magistrate judge because plaintiff was proceeding in this action *pro se* at that time. Because plaintiff has been represented by counsel in this action since October 10, 2023 (*see* Doc. No. 43), the pending motions are now being addressed by the undersigned.

1  without pay.  (*Id.* at ¶ 12.)  Under the MOU policy, unvaccinated TUSD employees, like plaintiff,
2  were required to undergo weekly COVID-19 testing and to divulge their protected medical
3  information to the local and state government pursuant to a CDPH mandate.  (*Id.*)  The CDPH
4  mandate required unvaccinated or incompletely vaccinated school workers to undergo weekly
5  diagnostic COVID-19 screening testing, even when asymptomatic.  (*Id.* at ¶ 13.)  This mandate
6  was either authored or directly approved by defendant Aragon in his official capacity as the
7  director of the CDPH.  (*Id.*)

8  Starting on or about October 15, 2021, plaintiff was required to undergo weekly COVID-
9  19 testing as a condition of his employment, even when he had no symptoms of the disease and
10  there was no reason to suspect he suffered from it.  (*Id.* at ¶ 14.)  Plaintiff has never tested
11  positive for COVID-19.  (*Id.* at ¶ 15.)  On November 7, 2021, plaintiff requested a religious
12  accommodation to forgo testing because he believed it was an unnecessary medical procedure
13  that violated his religious beliefs.  (*Id.* at ¶ 16.)   Within a few days of making that request,
14  plaintiff was contacted by TUSD human resources and verbally informed that he would not be
15  accommodated.  (*Id.* at ¶ 17.)  Plaintiff was not provided any response to his request for
16  accommodation in writing.  (*Id.* at ¶ 18.)  The TUSD never conducted an individual assessment of
17  plaintiff or held an interactive meeting with him.  (*Id.* at ¶¶ 19, 20.)

18  On or about September 16, 2022, the TUSD rescinded the policy from the October 8,
19  2021 MOU.  (*Id.* at ¶ 21.)

20  Based on the foregoing allegations in his FAC, plaintiff asserts three federal claims:  (1) a
21  Fourteenth Amendment equal protection claim brought under 28 U.S.C. § 1983; (2) a disability
22  discrimination claim brought under the Americans with Disabilities Act ("ADA")[3]; and (3) a First
23  Amendment religious discrimination claim brought under § 1983.  (Doc. No. 47.)  Additionally,
24  plaintiff asserts four state law claims.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief as
25  well as monetary damages.  (*Id.* at 11.)

---

[3]  Although plaintiff does not specify the specific Title of the ADA under which he brings his second claim, the court presumes that he is bringing this claim under Title I, which pertains to disability discrimination in employment.  *See* 42 U.S.C. §§ 12111, *et seq.*

On November 17, 2023, the Turlock defendants filed a motion to dismiss all claims brought by plaintiff in his FAC. (Doc. No. 49.) The same day, the state defendants likewise filed a motion to dismiss all of plaintiff's claims asserted in the FAC. (Doc. No. 50.) In connection with their motions to dismiss, each group of defendants filed a request for judicial notice.[4] On December 13, 2023, plaintiff filed his oppositions to the pending motions to dismiss. (Doc. Nos. 55, 57.) On December 20, 2023, the state defendants filed a reply in support of their motion. (Doc. No. 62.) Two days later, on December 22, 2023, the Turlock defendants filed a separate reply. (Doc. No. 63.)

## LEGAL STANDARD[5]

As courts of limited jurisdiction, federal courts are presumed to be without jurisdiction over civil cases. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). The burden of establishing otherwise lies with the party asserting jurisdiction. *Id.* Subject matter jurisdiction is required; it cannot be forfeited or waived. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Therefore, the absence of subject matter jurisdiction can be raised by either party at any stage of

---

[4] The Turlock defendants' unopposed request for judicial notice requests that the court take notice of the following three documents: (1) California State Public Health Officer Order of September 17, 2022; (2) District Board Policy 33; and (3) District Administrative Regulation 3320. (Doc. No. 49-2 at 2.) The state defendants' unopposed request for judicial notice requests that the court take notice of the following: (1) Orders of the State Public Health Officer, dated September 13, 2022 and August 11, 2021; and (2) that the August 11, 2021 State Public Health Officer Order was rescinded effective September 17, 2022, pursuant to the State Public Health Officer Order of September 13, 2022. (Doc. No. 50-2 at 2–3.) Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). While a court may take judicial notice of undisputed facts contained in public records, it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Here, the court will grant the state defendants' request in full, as well as the Turlock defendants' request as to the first document, given that these items are all matters of public records and plaintiff has not disputed any of them. However, the court will deny the Turlock defendants' request as to the second and third documents as moot because these documents are offered in support of arguments in the Turlock defendants' pending motion to dismiss which the court declines to address in this order.

[5] Because the court finds that dismissal is appropriate under Rule 12(b)(1), the court does not recite the legal standard applicable to a motion brought under Rule 12(b)(6).

4

1 the case through a motion to dismiss under Rule 12(b)(1).  *Id.* at 506.  In addition, the district

2 court may *sua sponte* raise the issue of lack of subject matter jurisdiction.  *Id.* at 514 ("[C]ourts,

3 including this Court, have an independent obligation to determine whether subject-matter

4 jurisdiction exists, even in the absence of a challenge from any party.").

5       Federal courts can lack subject matter jurisdiction for various reasons.  One such reason is

6 mootness:  federal courts do not have jurisdiction over moot claims.  *See Bishop Paiute Tribe v.*

7 *Inyo Cnty.*, 863 F.3d 1144, 1155 (9th Cir. 2017) ("A federal court lacks jurisdiction to hear a case

8 that is moot."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (explaining that because

9 mootness "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is]

10 properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)").  "A case

11 is moot where no actual or live controversy exists."  *Bishop Paiute Tribe*, 863 F.3d at 1155

12 (internal citation and quotation marks omitted).  "An actual controversy must exist not only at the

13 time the complaint is filed, but through all stages of the litigation."  *Kingdomware Techs., Inc. v.*

14 *United States*, 579 U.S. 162, 169 (2016).

15       Another reason for a lack of subject matter jurisdiction is if a defendant has sovereign

16 immunity.  If an entity entitled to sovereign immunity does not waive it, damages claims against

17 it cannot proceed, and dismissal under Rule 12(b)(1) is appropriate.  *See Mills v. United States*,

18 742 F.3d 400, 404 (9th Cir. 2014); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015)

19 (explaining that although "sovereign immunity is only quasi-jurisdictional in nature, Rule

20 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit").

21       **ANALYSIS**

22       In their respective pending motions to dismiss, defendants advance various arguments as

23 to why their motions should be granted.  (*See* Doc. Nos. 49, 50.)  Because, as explained below,

24 the court agrees with their arguments that (1) plaintiff's claims for injunctive and declaratory

25 relief are moot because the policies that plaintiff challenges have been rescinded, and (2) the

26 Eleventh Amendment bars all of plaintiff's claims for damages, the court will dismiss all claims,

27 without leave to amend.

28 /////

**A.     Mootness of Requests for Injunctive and Declaratory Relief**

The state defendants contend that plaintiff's requests for declaratory and injunctive relief are moot. (Doc. No. 50-1 at 13–15.) As they point out, the controversy between plaintiff and defendants did not exist at the time plaintiff filed the lawsuit, nor does one exist currently. (*See id.* at 15.) Plaintiff does not respond to this argument in his opposition.

The challenged policies of the CDPH mandate and the MOU—which required unvaccinated or incompletely vaccinated school workers to undergo weekly diagnostic COVID-19 screening testing—were rescinded in September 2022, two months before plaintiff filed his original complaint initiating this action. (Doc. Nos. 47 at ¶ 21; 49-2 at 2; 50-2 at 2–3.) Thus, there is no actual controversy between plaintiff and defendants.

The court notes that there are certain narrow exceptions to the mootness doctrine. One such exception is where a claim is "capable of repetition yet evading review." *Brach v. Newsom*, 38 F.4th 6, 15 (9th Cir. 2022). A second exception is when there is voluntary cessation of the allegedly illegal conduct with a reasonable expectation that the wrong will be repeated. *Id.* at 12. Plaintiff has not attempted to demonstrate that either of these exceptions applies. Indeed, as the state defendants emphasize in their reply, plaintiff has not even disputed that his claims for declaratory and injunctive relief are moot. (Doc. No. 62 at 2.) Even if plaintiff had argued that an exception to the mootness doctrine applied here, that argument would have failed. The voluntary cessation exception clearly does not apply because the challenged policies were not ceased due to litigation; rather, they were rescinded before plaintiff even filed his lawsuit. *See Brach*, 38 F.4th at 12 (finding that the voluntary cessation exception did not apply because "[t]he State did not abandon its policy after suit was filed in July 2020. Rather, the 2020–21 Reopening Framework, which was adopted before the litigation, automatically permitted schools to reopen permanently once their local areas achieved certain COVID-19 benchmarks"). Furthermore, the capable-of-repetition-yet-evading-review exception does not apply because there is no "reasonable expectation" that California will once against implement such policies. The challenged policies have long since been abandoned and there are no allegations that the state

/////

1  plans to reimplement them. *See id.* at 15 (holding that this exception did not apply because there
2  was "no 'reasonable expectation' that California will once again close the parents' schools").

3  Thus, the court agrees with the state defendants that plaintiff's claims seeking injunctive
4  and declaratory relief against them have been rendered moot. Due to the recission of the policies,
5  there is no longer a live controversy, which is necessary for Article III jurisdiction. *See id.* at 11
6  (dismissing claims challenging California's COVID-19 school closures as moot when the
7  closures were revoked because "there [was] no longer any state order for the court to declare
8  unconstitutional or to enjoin").

9  Although the Turlock defendants did not move to dismiss plaintiff's claims on mootness
10 grounds, the court "must raise issues concerning [its] subject matter jurisdiction sua sponte."
11 *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002); *see also* Fed. R. Civ. P.
12 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court
13 must dismiss the action."). For the same reasons as discussed above, this court finds that
14 plaintiff's claims for prospective relief against the Turlock defendants are also moot.

15 Accordingly, to the extent plaintiff's claims seek injunctive or declaratory relief, those
16 claims will be dismissed.

17 **B.  Eleventh Amendment Immunity**

18 All that remains against defendants are plaintiff's claims for damages. In this regard, each
19 set of defendants argues that they are entitled to immunity under the Eleventh Amendment of the
20 United States Constitution. (*See* Doc. Nos. 50-1 at 15–17; 49-1 at 10.)

21 "The Eleventh Amendment bars suits which seek either damages or injunctive relief
22 against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v.*
23 *Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). This immunity can be waived by the state or
24 abrogated by Congress. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985),
25 *superseded on other grounds by* 42 U.S.C. § 2000d–7. This immunity also extends to state
26 officers sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71
27 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the
28 /////

7

official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself") (citations omitted).[6]

In the court's order granting the prior motions to dismiss, the court noted that the state defendants appeared to be immune from suit for monetary damages pursuant to the Eleventh Amendment. (Doc. No. 40 at 6.) Plaintiff, in his FAC, fails to allege any additional facts which would alter this conclusion. In his opposition to the state defendants' motion to dismiss, plaintiff contends that his claims for monetary damages against the state defendants are not barred by sovereign immunity, but he only provides reasoning as to defendant Aragon, not the CPDH. (Doc. No. 55 at 8.) Regarding defendant Aragon, plaintiff argues that the state defendants overlook the fact that monetary damages can be pursued against a state officer if those damages are attributed to the officer personally and paid from the state treasury. (*Id.*) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Plaintiff argues that he has specifically alleged that defendant Aragon personally authored or directly approved the CDPH mandate, and therefore, that the damages sought can be attributed to defendant Aragon personally, "circumventing the [s]overeign [i]mmunity being claimed by [d]efendants." (*Id.*) In their reply, the state defendants argue that plaintiff's reliance on *Scheuer* is misplaced, (Doc. No. 62 at 2), and the court agrees. In *Scheuer*, the Supreme Court held that the Eleventh Amendment did not bar the petitioners' monetary damages claims because the petitioner sought to impose individual and personal liability on the defendants. 416 U.S. at 238. Here, however, unlike in *Scheuer*, plaintiff's claims are brought against defendant Aragon exclusively in his official capacity. *See id.* Thus, plaintiff's claims for monetary damages against the state defendants are barred by sovereign immunity. *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) ("[T]he eleventh amendment bars . . . claims in federal court against the state officials in their *official* capacities.")

/////

---

[6] Here, the state defendants assert, and plaintiff does not appear to challenge, that California has neither waived, nor has Congress abrogated, state sovereign immunity. (Doc. No. 50-1 at 16.) Furthermore, as the state defendants point out, plaintiff has not alleged waiver in his FAC. (*See id.*)

1    The Turlock defendants argue in their motion to dismiss that the TUSD, a public school district that is funded and governed by the State of California, is immune from suit in federal court under the Eleventh Amendment.  (Doc. No. 49-1 at 19.)  In his opposition, plaintiff argues that local school districts are separate and distinct political entities from the state and state educational agencies, and therefore are not immune from suit under the Eleventh Amendment. (Doc. No. 57 at 7.)  However, the Ninth Circuit has made clear that public school districts in California are arms of the state and are immune to suit under the Eleventh Amendment.  *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (holding that damages claims under § 1983 against a California public school district were barred by the Eleventh Amendment); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 254 (9th Cir. 2000) (holding that school district in California were state agencies for purposes of the Eleventh Amendment); *see also Viertell v. Hacienda La Puente Unified Sch. Dist.*, No. 22-cv-01439-DSF-PVC, 2022 WL 19076804, at *3–6 (C.D. Cal. July 19, 2022) (finding that the school district defendant was entitled to Eleventh Amendment immunity with respect to the plaintiff's claims, including the plaintiff's claims under Title I of the ADA).  Therefore, the court concludes that plaintiff's claims for damages against defendant TUSD are also barred by the Eleventh Amendment.

Furthermore, because defendant Lattig is a school administrator and is being sued only in his official capacity, he is immune from suits for damages.  *See Pena*, 976 F.2d at 472; *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167, 1179 (E.D. Cal. 2014) (holding that damages claims against public school district administrators in their official capacities are barred by the Eleventh Amendment).

For these reasons, the court will grant both pending motions to dismiss plaintiff's claims to the extent monetary damages are sought.  Consequently, because all claims for relief against defendants are either moot or barred by the Eleventh Amendment, the court need not reach defendants' other arguments.

/////

/////

### C.     Leave to Amend

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court has considered the *Foman* factors and finds that justice does not require granting plaintiff further leave to amend. The court recognizes that plaintiff might conceivably be able to amend his allegations to assert his claims against defendants Aragon and Lattig in their personal, as opposed to official, capacities. However, plaintiff has not alleged or otherwise indicated any personal involvement by defendants Aragon or Lattig that would justify suing them in their personal capacities. While plaintiff argues that he has alleged that defendant Aragon personally authored or directly approved the CDPH mandate that allegedly resulted in the plaintiff being forced to undergo weekly COVID testing (Doc. No. 50 at 8), this is an official act for which plaintiff cannot sue defendant Aragon. *See Robinson v. Dep't of Corr.*, No. 21-cv-00473-TSZ, 2022 WL 220524, at *2 (W.D. Wash. Jan. 25, 2022) (denying leave to amend as to a defendant, finding that amendment would be futile because the plaintiff did not allege the defendant's "personal participation beyond the official act of signing policies, and [the] Plaintiff cannot sue [the defendant] in his official capacity").

Because the court concludes that further amendment would be futile, plaintiff's claims will be dismissed without leave to amend.

### CONCLUSION

For the reasons explained above,

1. The Turlock defendants' request for judicial notice (Doc. No. 49-2) is granted in part and denied in part, as set forth herein;

2. The state defendants' request for judicial notice (Doc. No. 50-2) is granted;

3. Defendants' motions to dismiss (Doc. Nos. 49, 50) are granted, without leave to amend;

/////

4. This action is dismissed; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 9, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

11